IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**EDWARD WILLIAM BLAKE JR.**,

    **Movant,**

v.                                       **Case No. 2:17-cv-04595**
                                           **Criminal Case No. 2:17-cr-00107**

**UNITED STATES OF AMERICA**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 35), and Respondent's Response and Motion to Dismiss. (ECF No. 44).[1] This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined from a thorough review of the record that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255,

---

[1] The citations in this PF&R reference Movant's criminal case: *United States of America v. Blake*, No. 2:17-cr-00107 (S.D.W. Va. 2017).

1

(ECF No. 35); **GRANT** the Motion to Dismiss, (ECF No. 44); **DISMISS** this action, with prejudice; and **REMOVE** this matter from the docket of the Court.

I.    <u>**Factual and Procedural Background**</u>

In June 2017, a federal grand jury sitting in the Southern District of West Virginia returned an indictment which charged Movant, Edward William Blake Jr. ("Blake"), with possessing a firearm after being convicted of a crime of domestic violence in violation of § 922(g)(9) and § 924(a)(2). (ECF No. 1). On August 15, 2017, Blake entered into a plea agreement with the United States and pled guilty in open court to the charge contained in the indictment. (ECF Nos. 24, 27). In the plea agreement, Blake stipulated that on April 18, 2016, he was arrested after law enforcement officers responded to a domestic violence report at Blake's residence. (ECF No. 28 at 8). Blake's wife was placed in the hospital following his arrest. Law enforcement officials later returned to Blake's residence with Blake's wife, and she revealed where Blake had hidden a firearm prior to the arrival of law enforcement officers earlier that day. (*Id.*). Blake admitted that the firearm in question, a Bryco Arms 9mm caliber pistol, was manufactured in the State of California and had traveled in or affected interstate commerce. (*Id.* at 9). Blake additionally admitted that, at the time he possessed the firearm, he had previously been convicted of two crimes of domestic violence. Specifically, on September 12, 2005 in Nicholas County, West Virginia, he was convicted of Domestic Battery in violation of West Virginia Code § 61-2-28(a), and on March 7, 2005 in Nicholas County, West Virginia, he was convicted of Domestic Battery, Second Offense, in violation of West Virginia Code § 61-2-28(a). (*Id.* at 8). The Plea Agreement contained a waiver clause whereby Blake agreed to "knowingly and voluntarily" waive his right to appeal his conviction, or attack its validity through a habeas petition "on any ground whatsoever," except for a claim that his sentence exceeded the

statutorily permitted amount, or for claims based on ineffective assistance of counsel. (ECF No. 28 at 5).

On November 6, 2017, the District Court for the Southern District of West Virginia ("District Court") sentenced Blake to 21 months imprisonment and 3 years of supervised release. (ECF Nos. 31, 32). Blake did not appeal his sentence and instead filed the instant § 2255 petition in December 2017. (ECF No. 35). In the petition, Blake advances two grounds for relief. First, he argues that his conviction is invalid as the statute he was convicted under exceeds the authority granted to Congress by the United States Constitution. (*Id.* at 4). This is so, Blake contends, because "[t]here is no mention in the Commerce Clause of firearms possession for Congress to regulate such commerce..." (*Id.*). Second, Blake believes that the District Court lacked jurisdiction over his criminal case as the Constitution prohibits federal district courts from being vested with "'judicial [p]ower' over any unenumerated criminal conduct." (*Id.* at 5). Blake filed a contemporaneous memorandum in support of his petition in which he expounds upon these grounds for relief. (ECF No. 36).

On May 14, 2018, the United States submitted a Response arguing that Blake's § 2255 petition should be summarily dismissed as it contains "unmistakable procedural defects." (ECF No. 44 at 1). The United States contends that the petition should be dismissed as Blake expressly waived in his plea agreement the right to contest the validity of his conviction by collateral attack. (*Id.* at 3-4). The United States also argues that Blake's claims are procedurally defaulted as he did not raise them on direct appeal. (*Id.* at 7-8). Finally, the United States asserts that, even in the absence of these fatal procedural defects, the petition should be dismissed, because the claims raised by Blake do not entitle him to relief. (*Id.* at 1).

On May 25, 2018, Blake filed a Reply to the United States' Response. (ECF No. 45). Blake argues that his claims are outside the scope of the waiver contained in his plea agreement given that he is contending that "not only this Court, but all district courts of the United States cannot be vested with general criminal jurisdiction over felonies in general at all…" (*Id.* at 2). Blake asserts that these types of constitutional arguments, which dispute the existence of subject matter jurisdiction, are not waivable; thus, his petition is not barred by the terms of his plea agreement. (*Id.* at 3).

II. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an

evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

### III.  Discussion

As an initial matter, the undersigned notes that, since the filing of his petition, Blake has served his term of imprisonment and is no longer incarcerated on the crime of conviction. (ECF No. 45). Although Blake is no longer serving the prison sentence to which he objects, his case has not been rendered moot, because he remains on supervised release. *See United States v. Johnson*, 729 F. App'x 229, 230 (4th Cir. 2018) ("As an initial matter, we hold that [the petitioner's] release does not render this appeal moot as he remains on supervised release…"). Accordingly, the undersigned **FINDS** that Blake's petition may be considered on the merits notwithstanding his release from prison.

### 1. Waiver and procedural defect

Blake does not dispute the factual basis for his conviction, or argue that there were any procedural defects in the legal proceedings. Instead, Blake's claim is premised on the argument that both the statute under which he was convicted, and the judicial apparatus which administered the conviction, are prohibited by the Constitution. The United States, in a somewhat cursory manner, states that Blake's claims do not entitle him to relief, and proceeds to focus the bulk of its argument on demonstrating that Blake's claims are waived and procedurally barred. (ECF No. 44).

The Fourth Circuit has recognized that a defendant may waive his right to collaterally attack his conviction. *See United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). There is, however, a narrow class of exceptions to a valid collateral attack waiver, such as claims that a petitioner is actually innocent of a conviction, that the

5

sentence imposed was in excess of the maximum penalty allowed by statute, or was based on a constitutionally impermissible factor such as race. *See Smith v. United States*, No. 3:09-CR-00158-06, 2012 WL 5987526, at *22 n.13 (S.D.W. Va. June 27, 2012), *report and recommendation adopted*, No. CIV.A. 3:10-1398, 2012 WL 5987543 (S.D.W. Va. Nov. 29, 2012); *see also Whitaker v. Dunbar*, 83 F. Supp. 3d 663, 669 (E.D.N.C. 2014).

Blake argues that his waiver of the right to attack his sentence collaterally does not apply to this petition, because he is challenging the existence of the District Court's subject matter jurisdiction. (ECF No. 45 at 3). Blake cites to a 2018 decision by the Supreme Court of the United States ("Supreme Court"), *Class v. United States*, 138 S. Ct. 798, (2018), in support of that argument. (*Id*.). Blake contends that this decision stands for the proposition that a guilty plea will not bar a defendant from pursuing claims which attack the constitutionality of the offense of conviction. (*Id*.). In the *Class* decision, the Supreme Court held that, while a plea of guilty does bar the appeal of many claims, the defendant's guilty plea did not, by itself, implicitly waive his ability to argue on direct appeal that the statute he was sentenced under violated the Constitution. *Class,* 138 S. Ct. at 803. The *Class* Court additionally found that, as the defendant had not expressly waived his right to appeal on these grounds in his plea agreement, he should be permitted to raise the argument on appeal. *Id.* at 807.

Here, unlike in *Class,* Blake has expressly waived his right to collaterally attack his conviction on "any ground whatsoever," except for claims based on the ineffective assistance of counsel, or a claim that the sentence imposed exceeds the statutorily permitted amount. (ECF No. 28 at 5). Therefore, the *Class* decision is not determinative of Blake's ability to bring this claim despite his waiver. *See Lee v. USA*, No. CR-05-594-PCT-JAT, 2018 WL 4899567, at *2 (D. Ariz. Oct. 9, 2018) ("[T]his Court finds that the

6

holding of *Class* is limited to pleas that have no express waivers."); *see also United States v. Yousef*, No. 08 CR. 1213 (JFK), 2019 WL 2435621, at *2 (S.D.N.Y. June 10, 2019) (collecting cases). However, as Blake points out, a defendant cannot waive jurisdictional challenges as subject matter jurisdiction cannot be conferred through a waiver or by procedural default. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[The] concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."); *see also United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007) (finding that if the defendant's jurisdictional argument had merit, he would be entitled to raise it despite procedural default); *United States v. Quarles*, 194 F. App'x 103, 104 (4th Cir. 2006) ("A guilty plea effects a waiver of all *non-jurisdictional* defects in the indictment.") (emphasis added); *United States v. Thompson*, 702 F.3d 604, 606 (11th Cir. 2012) ("While an unconditional guilty plea acts as a waiver of all non-jurisdictional challenges to a conviction, challenges to subject matter jurisdiction cannot be waived.").

As explained below, the basis for Blake's assertion that the District Court lacked subject matter jurisdiction is patently frivolous. However, as he is asserting a subject-matter jurisdiction challenge, (ECF No. 36 at 13), the undersigned accordingly **FINDS** that this claim is not barred by his plea agreement. Whether Blake may bring his second claim—that the statute under which he was convicted is facially unconstitutional—in the face of an express waiver is less certain. *See e.g. Slavek v. Hinkle,* 359 F. Supp. 2d 473, 486-87 (E.D. Va. 2005) (questioning whether facial attack on constitutionality of statute was jurisdictional in nature and thus not barred by waiver, but ultimately deciding merits of claim); *Aquino v. United States*, No. 09 CR 555 HB, 2013 WL 1880772, at *3 (S.D.N.Y. May 6, 2013) (same). Ultimately, the undersigned **FINDS** that it is unnecessary to determine whether Blake's second claim is barred by his plea agreement given that the

claim plainly fails on the merits.[2]

**2. Jurisdiction of federal courts**

Blake argues that his conviction is invalid as the Constitution does not endow federal district courts with subject matter jurisdiction over criminal cases. (ECF No. 36 at 13). Article III, Section 1 of the United States Constitution provides that "[t]he judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. The reach of this judicial power is further described in Article III, Section 2, Clause 1, which states, "the judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority…" U.S. Const. art. III, § 2, cl. 1.

The Constitution grants Congress the power to create inferior courts and to assign jurisdiction for those courts. Congress has done so through 18 U.S.C. § 3231, which provides that federal district courts "shall have original jurisdiction, exclusive of the court of the States, of all offenses against the laws of the United States." This statute does not exceed the authority granted to Congress by the Constitution; to the contrary, it closely tracks the language stating that judicial power shall extend to all cases "arising under … the Laws of the United States…". U.S. Const. art. III, § 2, cl. 1.

Blake's belief that the Constitution's use of the phrase "law and equity" in defining the jurisdiction of federal courts means that federal district courts may only hear cases

---

[2] An additional reason for deciding this claim on the merits rather than relying on Blake's waiver is that the United States has not provided a transcript of the plea hearing, frustrating an analysis of whether Blake's waiver of his right to collaterally attack his sentence was knowing and voluntary. *See Mack v. United States*, No. CR 5:11-2384-MBS, 2015 WL 139725, at *2 n.1 (D.S.C. Jan. 12, 2015) ("Rather than incur the expense of requesting the transcripts of Movant's Rule 11 plea colloquy and sentencing hearing to make the necessary factual findings that the waiver was knowing and voluntary, the court simply addresses the merits of Movant's § 2255 motion.").

8

that are civil in nature stems from a misapprehension as to what the term "law and equity" means. Blake first assumes that "equity" means civil in nature, and then contends that as the phrase is not separated by a comma, all suits in United States courts must be civil cases. (ECF No. 36 at 14-17). However, the reference to law and equity in Article III of the Constitution refers to an 18th century distinction between actions at law and suits in equity, which today is largely vestigial. *See generally* Samuel L. Bray, *The Supreme Court and the New Equity*, 68 Vand. L. Rev. 997, 999 (2015). Nearly 200 years ago, Justice Story explained the difference between these two structures of law in examining the reach of the Seventh Amendment's right to trial by jury:

> The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence. ... By common law, they meant *what the constitution denominated in the third article 'law;'* not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, *in contradistinctio*n to those where equitable rights alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit.

*Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446–47 (1830) (emphases added). Since the merger of law and equity following the adoption of the Federal Rules of Civil Procedure in 1938, the distinction is today generally only relevant in determining whether the right to a jury trial attaches in a civil suit. *See In re U. S. Fin. Sec. Litig.*, 609 F.2d 411, 422 (9th Cir. 1979) (noting that determining whether the right to a jury trial applies may be the only area where "the ancient distinction between law and equity ... has any further significance." (citing *Groome v. Steward*, 79 U.S.App.D.C. 50 (D.C. Cir. 1944)).

Accordingly, the fact that Article III of the Constitution delineates federal jurisdiction as extending to "all cases in law and equity" certainly does not mean that

9

federal courts lack subject matter jurisdiction over criminal matters. Indeed, as the phrase refers to a *distinction* between two systems of law, Blake's argument that federal courts may only have jurisdiction over cases that are both of law *and* equity would render Article III's adumbration of federal jurisdiction utterly meaningless. For this reason, and contrary to Blake's assertion, Congress's ability to create federal laws and assign the punishment of those who violate them to federal courts has long been recognized without any mention of a barrier imposed by the phrase "law and equity." *See M'Culloch v. State*, 17 U.S. 316, 416 (1819) ("All admit, that the government may, legitimately, punish any violation of its laws; and yet, this is not among the enumerated powers of congress."); *see also Lamar v. United States*, 240 U.S. 60, 65 (1916) ("[N]othing can be clearer than that the district court, which has jurisdiction of all crimes cognizable under the authority of the United States, acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong."); *Hugi v. United States*, 164 F.3d 378, 379 (7th Cir. 1999) ("Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts."); *Gallardo v. Saad*, No. 5:17CV106, 2019 WL 2479305, at *8-9 (N.D.W. Va. Mar. 18, 2019), *report and recommendation adopted*, No. 5:17CV106, 2019 WL 1568063 (N.D.W. Va. Apr. 11, 2019) (rejecting similar argument and providing a history of the composition of the federal judiciary).

Blake was charged with possessing a firearm after being convicted of a misdemeanor crime of domestic violence in violation of federal law as codified in 18 U.S.C. § 922(g)(9) and § 924(a)(2). As such, the District Court clearly had jurisdiction over his case. *See United States v. McAtee,* No. 5:13-CR-17, 2013 WL 3364452, at *4 (N.D.W. Va.

July 3, 2013) ("Here, [the plaintiff] has been charged with criminal contempt, an offense against the United States codified at 18 U.S.C. 401(3). Clearly then this Court has jurisdiction to hear the subject matter presented.") Accordingly, the undersigned **FINDS** that Blake's claim based on the lack of subject matter jurisdiction should be dismissed.

### 3. Section 922 not authorized by Commerce Clause

Blake also argues that the statute used to convict him represents an invalid extension of the federal power to regulate conduct and is consequently unconstitutional. (ECF No. 36 at 3). The premise of Blake's argument is that Congress is unable to create any federal crimes unless they are expressly permitted to do so by the text of the Constitution. (*Id.* at 4, 9). This interpretation of the Constitution was specifically rejected by the Supreme Court 200 years ago. *M'Culloch* 17 U.S. at 416 ("All admit, that the government may, legitimately, punish any violation of its laws; and yet, this is not among the enumerated powers of congress."). It is true that "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). However, "'a government, entrusted with such' powers 'must also be entrusted with ample means for their execution.'" *United States v. Comstock*, 560 U.S. 126, 133 (2010) (quoting *M'Culloch*, 7 U.S. at 408). "Thus, the Constitution, which nowhere speaks explicitly about the creation of federal crimes beyond those related to 'counterfeiting,' '[t]reason,' or 'Piracies and Felonies committed on the high Seas' or 'against the Law of Nations,' nonetheless grants Congress broad authority to create such crimes." *Id.* at 135-35 (citations and quotations omitted). Congress, accordingly, "routinely exercises its authority to enact criminal laws in furtherance of" its enumerated powers. *Id.*

The enumerated power which Congress relied on to enact the statute at issue here is the Commerce Clause. The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. It is well established that under the authority granted by the Commerce Clause, Congress may "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (citing *Perez v. United States*, 402 U.S. 146, 151 (1971) and *Wickard v. Filburn*, 317 U.S. 111, 128–129 (1942)). While Congress's authority to regulate activity under the Commerce Clause is broad, it must identify a "nexus to interstate commerce" showing that the law has an "explicit connection with or effect on interstate commerce" before it may prohibit local activity. *United States v. Lopez*, 514 U.S. 549, 562 (1995).

The Fourth Circuit has specifically held that § 922(g) fulfills this requirement and that the statute is a valid exercise of Congressional power. *See United States v. Wells*, 98 F.3d 808, 811 (4th Cir. 1996). This is because, § 922(g) requires the Government to prove that any firearm possessed in violation of the statute was "ship[ped] or transport[ed] in interstate or foreign commerce"; was "possess[ed] in or affect[ed] commerce"; or was received after having "been shipped or transported in interstate or foreign commerce." *Id.* (quoting 18 U.S.C.A. § 922(g)). The existence of "this jurisdictional element" which requires the government "to show that a nexus exists between the firearm and interstate commerce to obtain a conviction under § 922(g), … satisfies the minimal nexus required for the Commerce Clause." *Id.* The Fourth Circuit has continually upheld the validity of § 922(g) in face of attacks such as that brought by Blake. *See e.g. United States v. Anderson*, 249 F. App'x 982, 984 (4th Cir. 2007); *United States v. Kline*, 494 F. App'x 323, 325 (4th

Cir. 2012). The majority of circuits that have considered the issue have reached the same conclusion. *See Wells*, 98 F.3d at 811 (collecting cases); *United States v. Dupree*, 258 F.3d 1258, 1260 n.1 (11th Cir. 2001) (same). Given that binding Fourth Circuit precedent forecloses Blake's argument that § 922(g) is an invalid exercise of Congressional power, the undersigned **FINDS** that this claim should be dismissed.

In summary, both grounds for relief raised by Blake are clearly meritless. Therefore, the undersigned **FINDS** that Blake's petition should be dismissed.

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 35), be **DENIED;** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: July 22, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge